IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J. BRIAN FERGUSON                                                    TRUSTEE/APPELLANT

V.                              CASE NO. 5:22-CV-5245

JAIME CASTILLO TORRES                                                  DEBTOR/APPELLEE

## MEMORANDUM OPINION AND ORDER

Before the Court is Trustee/Appellant J. Brian Ferguson's appeal of the bankruptcy court's decision concerning Debtor/Appellee Jaime Castillo Torres's homestead exemption. Both parties agree Mr. Torres is entitled to claim a homestead exemption under the Arkansas Constitution, but they disagree as to how much of the homestead's acreage is subject to the exemption and protected from Mr. Torres's creditors. On October 18, 2022, the Honorable Bianca M. Rucker, United States Bankruptcy Judge for the Western District of Arkansas, presided over a day-long evidentiary hearing concerning this issue and considered the testimony of multiple witnesses, documentary evidence, and the oral argument of counsel. On December 6, 2022, Judge Rucker issued an Order and Opinion (Doc. 1-12) overruling the Trustee's objection and approving Mr. Torres's claim for a rural homestead exemption. The Trustee timely appealed the matter to this Court.

Upon consideration of the record on appeal, including the evidentiary briefing, exhibits, and transcript and the briefing on appeal, the Court **AFFIRMS** the bankruptcy court's decision for the reasons explained herein.

1

## I.     BACKGROUND

Mr. Torres filed for Chapter 7 bankruptcy on December 7, 2021, and listed his family residence as 4346 North Oak Street, Springdale, Arkansas ("the Homestead"). This property consists of a 1.1-acre parcel of land containing several varieties of fruit- and nut-bearing trees, a small pond with fish, and a vegetable garden.  Three generations occupy the Homestead:  Mr. Torres and his ex-wife, their two daughters, and an infant grandchild.

When Mr. Torres acquired the Homestead in 2016, it was located in a community called Bethel Heights, which had a population of about 1,300 residents.  Bethel Heights operated two sewer plants that were not properly maintained and eventually became environmental hazards for the community's residents.  One of the sewer plants was located just up the road from the Homestead on Oak Street.  In 2020, the nearby City of Springdale, which has a population of around 87,000 residents, annexed Bethel Heights in order to close down and remediate the defective sewer systems.  By the time Mr. Torres filed for bankruptcy, the Homestead lay entirely within Springdale's city limits. Nevertheless, Springdale zoned the Homestead and its immediate surroundings as an agricultural district.

Under Article 9, Section 4 of the Arkansas Constitution, up to 80 acres of a debtor's homestead is exempt from creditors, provided that the debtor "own[s] and occupie[s] [the homestead] as a residence" and the parcel is primarily rural in character. But if a homestead is primarily urban in character, only "one-quarter of an acre of land" is exempt from creditors pursuant to Article 9, Section 5 of the Constitution.  In the bankruptcy proceedings below, Mr. Torres claimed the Homestead was primarily rural under Section

4, which meant all 1.1-acres would be exempt. The Trustee objected, arguing the Homestead was primarily urban and that only one-quarter of an acre should be exempt.

After considering the evidence presented during the evidentiary hearing, Judge Rucker concluded that the fact that the Homestead was located wholly inside Springdale's city limits was "an important factor, though not determinative" of whether the property was rural or urban in nature. (Doc. 1-12, p. 11). She listed certain facts that tended to show the property was urban, followed by other facts that tended to show the property was rural. After weighing these two sets of facts, she found the scales tipped in favor of finding the Homestead rural, noting that in light of the public policy that "all presumptions are to be made in favor of the preservation and retention of the homestead," Mr. Torres "should not be denied his entitlement to a rural homestead simply because his neighbors, or even governmental entities, have taken steps toward urbanizing the surrounding area." *Id.* at pp. 11–12 (quoting *In re Shefte*, 632 B.R. 772, 775–76 (W.D. Ark. 2021)).

The first issue on appeal is a purely legal one. The Trustee argues that the Homestead's location within the city limits of Springdale is dispositive of the rural/urban classification. He contends that "under any textual interpretation of the Arkansas Constitution," the location of a homestead within a city's limits "end[s] the analysis and le[aves] no room for an analysis of the use of the property." (Doc. 6, p. 14).

The second issue is a purely factual one. The Trustee believes the evidence of record does not support Judge Rucker's finding that the Homestead is "adjacent to nine to ten acres of 'open field' where cattle sometimes graze." (Doc. 1-12, p. 11). Judge Rucker relied on this fact when concluding there was more evidence to show the Homestead was more rural than urban in nature.

The third issue concerns a discretionary ruling. The Trustee contends Judge Rucker relied on a true, but irrelevant fact—the time it takes Mr. Torres's daughter to travel to her school—to justify classifying the Homestead as rural. The Trustee urges the Court to strike this fact from consideration and take judicial notice of other, more relevant facts about the distance from the Homestead to three Springdale public schools, a hospital in Springdale, and Springdale City Hall. *See* Doc. 5, Trustee's Motion for Judicial Notice.

Lastly, the fourth issue on appeal is the ultimate one: whether the bankruptcy court erred in overruling the Trustee's objection to characterizing the Homestead as rural.

## II.    LEGAL STANDARD

The Court has reviewed the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *See In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005). The question of whether a debtor is entitled to exempt certain property from the bankruptcy estate is a question of state law that is subject to *de novo* review. *See In re Peterson*, 897 F.2d 935, 937 (8th Cir. 1990). However, decisions that are committed to the bankruptcy court's discretion are reviewed for abuse of discretion. An abuse of discretion occurs when the bankruptcy court "fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." *In re Farmland Indus., Inc.*, 397 F.3d 647, 651 (8th Cir. 2005) (citing *Stalnaker v. DLC, Ltd.*, 376 F.3d 819, 825 (8th Cir. 2004)).

## III.     DISCUSSION

**A. Issue One:  Does the fact that the Homestead lies within the city limits of Springdale mean the property is "urban"?**

According to the Trustee, the location of the Homestead within the city limits of Springdale is dispositive of whether the property qualifies as rural or urban for exemption purposes.  He is correct that Article 9, Section 5 of the Arkansas Constitution describes an urban homestead as property located "in any city, town or village," while Section 4 defines an rural homestead as property located "outside any city, town or village."  But over a century ago, the Arkansas Supreme Court *rejected* this very argument, finding instead that a homestead's location "within the limits of a municipal corporation" will not "in all cases prevent [the debtor] from holding as exempt a homestead of more than one acre."  *First Nat'l Bank of Owatonna v. Wilson*, 32 S.W. 544, 544 (Ark. 1896).  The Arkansas Supreme Court imagined a hypothetical situation "where the corporate limits of a town or city have been extended beyond the actual extent of such urban community, so as to include territory altogether rural."  *Id.*  If that were the case, it would be incorrect for a reviewing court to simply label the homestead "urban."  Instead, the court should "look to the facts to determine whether the homestead claimed was located in town or country, and not be altogether controlled by the corporate limits."  *Id.*

The case at bar mirrors the hypothetical case suggested by the Supreme Court in *Wilson*.  When the City of Springdale annexed the rural community of Bethel Heights, the "corporate limits of [the] . . . city [were] extended beyond the actual extent of such urban community, so as to include territory altogether rural."  *Id.*  Given these circumstances, the bankruptcy court appropriately "look[ed] to the facts" to determine the true character of Mr. Torres's Homestead.  *Id.*

5

In 1976, the Arkansas Supreme Court revisited its decision in *Wilson* and elaborated on the same theme, holding "that in doubtful cases, the use made of the property is very much pertinent to the question of whether a homestead is urban or rural" and that "each case stands on its own facts." *Farmers Co-op. Ass'n v. Stevens*, 260 Ark. 735, 736–37 (1976). In its analysis, the Court considered facts about the surrounding community, including the types of municipal services available, such as water and electricity, and the homestead's proximity to schools, service stations, and other places of interest in determining the land's essential character. *Id.* at 736.

Since *Wilson* and *Stevens* were decided, federal bankruptcy courts in Arkansas have largely developed the case law on rural versus urban homestead exemptions, carefully weighing the pertinent facts in borderline cases to determine whether a debtor's homestead—regardless of its physical location inside a city's limits, outside those limits, or straddling the official boundary line—was more rural or urban. *See, e.g.*, *In re Shefte*, 532 B.R. at 779 (finding that a 2.5-acre homestead located just outside the corporate limits of Fayetteville, but within two or three miles of banks, stores, and other businesses, was predominantly rural in character); *In re Kelley*, 455 B.R. 710, 717 (E.D. Ark. 2011) (deeming a homestead rural in character after considering the location of the property just outside the city limits of Helena–West Helena, the city services provided to the property, the non-agricultural use of the property, and "the impression gained from a view of the residence and surrounding areas"); *In re Evans*, 190 B.R. 1015, 1023–24 (E.D. Ark. 1995) (determining that a homestead was urban in nature though located six to eight feet away from Pine Bluff's city limits, since the property was not used for agricultural purposes,

enjoyed all the modern conveniences of a city dwelling, and was surrounded by a number of commercial and industrial businesses uncharacteristic of a rural area).

The Court concludes that Judge Rucker correctly focused on the characteristics of the Homestead and the surrounding area in making her determination as to the character of the property. In accordance with Arkansas law, she did not allow the Homestead's location in the city limits of Springdale to control her analysis.

**B. Issue Two: Did the bankruptcy court clearly err in finding that the Homestead is adjacent to nine to ten acres of open field?**

In his appellate brief (Doc. 6), the Trustee raised this issue, and Mr. Torres addressed it in his response (Doc. 13). The Trustee's reply (Doc. 14) conceded the argument. He described Mr. Torres's explanation of the fact in dispute as "well supported." *Id.* at p. 12. Therefore, the Court concludes that the Trustee no longer seeks a ruling on Issue Two and has withdrawn it from further consideration. However, if the Court is wrong and a ruling is still requested, the Court finds no clear error in Judge Rucker's finding of this particular fact. Mr. Torres's explanation of the term "adjacent" is sound, and his citation to testimony provided during the evidentiary hearing shows that there is sufficient evidence to support this finding of fact. *See* Doc. 13, pp. 21–26.

**C. Issue Three: Is the time it takes to drive from the Homestead to a school in Rogers, Arkansas, relevant to the exemption issue? (And are there other, more relevant facts the Court should take judicial notice of concerning distances between the Homestead and other points of interest?)**

The bankruptcy court found that "it takes between twenty and thirty minutes for . . . the debtor's daughter to reach her school," and it used that fact to support its determination "that there is simply more evidence that the Oak Property is rural [rather than urban] in nature." (Doc. 1-12, p. 11). The Trustee correctly observes that Mr. Torres

7

testified at the hearing that his daughter attends a school in Rogers, Arkansas, which is a city north of Springdale.  There are certainly public schools in Springdale that are closer to the Homestead than schools in Rogers.  The Court therefore agrees with the Trustee that the time it takes for Mr. Torres's daughter to travel to a school in another city is irrelevant to the rural or urban character of the Homestead.  Accordingly, the Court will disregard this fact when ruling on Issue Four below.

Relatedly, the Trustee filed a Motion to Take Judicial Notice (Doc. 5) of certain distances between the Homestead and other locations in Springdale. He readily admits he did not mention these distances during the evidentiary hearing but argues that an appellate court may properly take notice of geographical facts and distances using commercial websites, such as MapQuest or Google Maps, as these facts are beyond debate.  *See id.* at p. 3.  Specifically, the Trustee asks the Court to take notice that the distance between the Homestead and an elementary school in Springdale is 2.8 miles, the distance between the Homestead and a junior high school in Springdale is 4.5 miles, the distance between the Homestead and Springdale High School is 3.6 miles, the distance between the Homestead and Regency Hospital in Springdale is 3.8 miles, and the distance between the Homestead and Springdale City Hall is 3.5 miles.  *Id.* at pp. 5–6.  Mr. Torres objects to the Trustee's apparent attempt to expand the record with additional facts and argues the map evidence is hearsay.  *See* Doc. 8, p. 2.  Separately, Mr. Torres moves to strike the Trustee's Motion.  *See* Doc. 9.

The Court **DENIES** the Trustee's Motion to Take Judicial Notice (Doc. 5) and **DENIES AS MOOT** Mr. Torres's Motion to Strike (Doc. 9).  Though the Eighth Circuit in *Gustafson v. Cornelius* authorized taking judicial notice of a fact for the first time on

appeal, 724 F.2d 75, 79 (8th Cir. 1983), it appears the court thought better of this approach in subsequent decisions. For example, in *Minnesota Federation of Teachers v. Randall*, 891 F.2d 1354, 1360 n.9 (8th Cir. 1989), the Court of Appeals cited *Gustafson* with disfavor and noted that "the better reasoned rule" was to limit the record on appeal to what was before the lower court, noting:

> It is unfair to reverse the district court upon evidence which it had no opportunity to consider. Here, it is also unfair to the parties, especially the appellees, to have an appeal considered on factual matters not offered or received as part of the [lower court] proceeding.

*Id.*

Moreover, the new facts cited in the Trustee's Motion are similar to those already in the record that the bankruptcy court considered in making its ruling. *See* Doc. 1-12, p. 11 (observing that "both a bank and a post office are within approximately two miles of the debtor's property"). Even if the Court were to take judicial notice of these facts and add them to the "urban" side of the ledger, they would not alter the Court's decision on Issue Four, which is discussed below.

**D. Issue Four: Did the bankruptcy court err in weighing the facts, applying the law, and concluding the Homestead is "rural" in character?**

Having completed its *de novo* review of the record, the Court concludes that Judge Rucker appropriately weighed the characteristics of the Homestead and its surroundings to determine its essential character. The Court agrees this was a close call, as some facts presented at the evidentiary hearing supported a finding that the Homestead was urban, while other facts tended to show the Homestead was rural.

The facts that weighed in favor of an urban designation were: the presence of a well-maintained city park just south of the Homestead; the provision of utilities and other

services by the City of Springdale, including city water, fire protection, and trash removal;[1] the presence of two fire hydrants near the Homestead; the proximity of the Homestead to a bank and a post office;[2] the presence of Highway 264, a busy road, located to the north of the Homestead; the widening of a portion of North Oak Street to accommodate increasing traffic; and the fact that the Homestead is wholly within the city limits of Springdale.  *See* Doc. 1-12, pp. 10–11.

Facts weighing in favor of a rural designation were:  the absence of curbs, gutters, and sidewalks near the Homestead; the proximity of the Homestead to nine to ten acres of open field where cattle sometimes graze; the presence of chicken houses and hay bales on nearby properties; the lack of traffic on Oak Street; the fact that the Homestead and several surrounding properties remain on septic systems; the larger lot sizes of the Homestead and the property across the street; the presence of metal outbuildings and a trailer on the property across the street; the fact that the Homestead and several surrounding properties are zoned by the City of Springdale as "A-1" for agricultural use; and the fact that Mr. Torres purchased the Homestead with the intent to use it for agricultural purposes.  *Id.*

During the hearing, the Trustee minimized the Torres family's use of the Homestead for agricultural purposes, at one point describing it as "a little hobby garden." (Doc. 1-11, p. 222).  The Court disagrees.  Mr. Torres testified—and photographic evidence substantiated—that he and his family use the Homestead for substantial,

---

[1] Additional evidence in the record showed the Homestead receives electricity through Southwestern Electric Power Company and natural gas through Black Hills Energy.  *See* Doc. 1-38, pp. 4–5.

[2] These amenities are located within about two miles of the Homestead.

noncommercial, agricultural purposes. *See* Docs. 1-24–1-28. The family grows cucumbers, carrots, onions, cilantro, cherry tomatoes, Roma tomatoes, leaf tomatoes, tomatillos, cactuses (for consumption), a variety of chiles, and five or six varieties of fruit and nut trees (including apple, pear, plum, and apricot). They work in the garden almost daily and harvest the fruits and vegetables. They eat the food immediately or freeze or otherwise preserve the food for the winter. *See* Doc. 1-11, pp. 181–83. The extent of a debtor's agricultural use of a property is "of great weight in deciding" its character. *Stevens*, 260 Ark. at 738. The Court finds compelling the fact that Mr. Torres and his family have put the 1.1-acre property to substantial agricultural use. This fact distinguishes this case from others cited by the Trustee in his briefing.

The Trustee bears the burden of proof that an exemption claimed by the debtor is improper. *See In re Kelley*, 455 B.R. 710, 717 (E.D. Ark. 2011); Fed. R. Bankr. P. 4003(c). This means that in the event of a draw, the debtor will prevail. The public policy of Arkansas also favors the debtor's preservation and retention of the homestead, as "homestead laws are remedial and should be liberally construed to effectuate the beneficent purposes for which they are intended." *Franklin Fire Ins. Co. v. Butts*, 42 S.W.2d 559, 563 (Ark. 1931).

Because the Trustee did not carry his burden of proof on his objection and because the facts favor a rural designation over an urban one, the Court **AFFIRMS** the bankruptcy court's decision that the entire 1.1 acres of Homestead is exempt as rural pursuant to Article 9, Section 4 of the Arkansas Constitution.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Trustee's Motion to Take Judicial Notice (Doc. 5) is **DENIED**; Mr. Torres's Motion to Strike (Doc. 9) is **DENIED AS MOOT**; and in view of the Court's resolution of the enumerated issues on appeal, the bankruptcy court's conclusion as to the rural character of the Homestead is **AFFIRMED**.

Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this 29th day of September, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE